**Case No. 24-2214**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Students for Fair Admissions, Inc.,
*Plaintiff-Appellant*

v.

United States Naval Academy, et al.,
*Defendants-Appellees*

On Appeal from the United States District Court
for the District of Maryland
No. 1:23-cv-02699 (Bennett, J.)

**JOINT MOTION TO DISMISS AND VACATE THE DISTRICT COURT'S JUDGMENT AND OPINION**

Pursuant to Federal Rule of Appellate Procedure 42(b)(2)-(3), plaintiff-appellant, Students for Fair Admissions, Inc. (SFFA), and defendants-appellees, United States Naval Academy *et al.*, hereby jointly move for an order of this Court dismissing this appeal as moot, vacating the district court's judgment and opinion, and remanding with instructions to dismiss the complaint without prejudice.

For the reasons set forth below, after conferring, the parties now agree that this case is moot. The proper remedy is thus the normal one:

dismissal and vacatur under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). Specifically, this Court should dismiss this appeal as moot; vacate the district court's opinion and judgment, D.Ct.Docs.150 & 151; and remand with instructions to dismiss this case without prejudice as moot. In support of that request, the parties jointly state the following:

    1.    This litigation concerns the United States Naval Academy's use of race and ethnicity in admissions. In *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, the Supreme Court held that race-based college admissions are unconstitutional. 600 U.S. 181, 231 (2023). The Court's opinion did "not address" race-based admissions at our nation's military academies in light of the "potentially distinct interests" that those academies "may present." *Id.* at 214 n.4.

    2.    SFFA filed this lawsuit in October 2023, alleging that the consideration of race or ethnicity in admissions at the United States Naval Academy violates the Constitution. In its complaint, SFFA sought a declaration and injunctive relief "prohibiting the Academy from considering or knowing applicants' race when making admissions decisions." D.Ct.Doc.1 at 27.

2

3. After discovery, the district court granted SFFA's motion for partial summary judgment on the issue of Article III standing. D.Ct.Doc.113. The court found that one of SFFA's members, "Member D," was "'able and ready' to apply to the Naval Academy": Member D had applied and been rejected once before, and he was "actively reapplying" for the 2024-25 admissions cycle. D.Ct.Doc.112 at 11, 3.

4. After trial, the district court entered judgment for the government and against SFFA. D.Ct.Doc.151. In its 175-page opinion, the court ruled "the Naval Academy's race-conscious admissions program" withstands "strict scrutiny," stressing throughout that the court "defers to the executive branch with respect to military personnel decisions." D.Ct.Doc.150 at 7. Its bottom-line conclusion was that, "under Article II of the Constitution, the President of the United States, not any federal judge ultimately makes such decisions." *Id.* (cleaned up).

5. SFFA timely appealed. D.Ct.Doc.152.

6. Before SFFA's opening appellate brief was due, however, the Naval Academy ceased the challenged practices at issue in this litigation. As explained below, as a result of directives from the President of the United States and the Secretary of Defense, and the implementation of

3

those directives by the Naval Academy's Superintendent and Dean of Admissions, the consideration of race or ethnicity is no longer permitted in admissions to the Naval Academy. As also explained below, that change in policy reflects that, upon further consideration, the United States no longer believes that the challenged practices were justified by a "compelling national security interest in a diverse officer corps in the Navy and Marine Corps," on which the district court had relied. D.Ct.Doc.150 at 7.

7. On January 20, 2025, President Donald J. Trump assumed office. One week later, President Trump issued Executive Order 14185, entitled *Restoring America's Fighting Force*. *See* 90 Fed. Reg. 8763 (Jan. 27, 2025) (EO 14185). EO 14185 declares that "[n]o individual or group within our Armed Forces should be preferred or disadvantaged on the basis of sex, race, ethnicity, color, or creed." *Id.* § 1. The President thus announced that it is "the policy of [this] Administration that the Department of Defense ... and every element of the Armed Forces should operate free from any preference based on race or sex." *Id.* § 2. To implement that policy, EO 14185 directed the Secretary of Defense to "conduct an internal review" with respect to "all instances of race and sex discrimination and activities designed to promote a race- or sex-based preferences

4

system" in the United States military. *Id.* § 5. EO 14185 directed that "[t]he Department of Defense and the Armed Forces, including any educational institution operated or controlled thereby, are prohibited" from "advancing ... race or sex stereotyping." *Id.* § 6(a).[1]

8. The Department of Defense (DoD) swiftly implemented that presidential directive. On January 29, 2025, the Secretary of Defense issued a "Memorandum for Senior Pentagon Leadership, Commanders of

---

[1] The President has also issued related directives to other federal agencies. On January 21, 2025, President Trump issued Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8633 (Jan. 21, 2025). The President "order[ed] all executive departments and agencies . . . to terminate all discriminatory and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements." *Id.* In addition, on February 5, 2025, Attorney General Bondi issued a Memorandum on *Eliminating Internal Discriminatory Practices*, which emphasizes that the Department of Justice is committed to "ensuring equal protection under the law." As the Attorney General explained, "[e]liminating racial discrimination means eliminating all of it." Attorney General Mem., *Eliminating Internal Discriminatory Practices* (Feb. 5, 2025) (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023)). The Attorney General's Memorandum directs the Department of Justice to thoroughly evaluate its litigating positions "for race- or sex-based preferences" and ensure its positions align with the "requirement of equal dignity and respect." *Id.*

the Combatant Commands, Defense Agency and DOD Field Activity Directors" about "Restoring America's Fighting Force" (the January SecDef Memorandum).[2] The January SecDef Memorandum acknowledged that, in EO 14185, "the President"—acting as "Commander in Chief"—had "prohibited any preference or disadvantage for an individual or a group within the Armed Forces on the basis of sex, race, or ethnicity." *Id.* at 1. Accordingly, the January SecDef Memorandum announced that "a foundational tenet of the DoD must always be that the most qualified individuals are placed in positions of responsibility in accordance with merit-based, color-blind policies." *Id.* (emphasis omitted). In a paragraph entitled "Elimination of Quotas, Objectives, and Goals," the January SecDef Memorandum directs that "[n]o DoD Component will establish sex-based, race-based, or ethnicity-based goals for organizational composition, *academic admission*, or career fields." *Id.* (emphasis added).

9.  In response to those directives, in February 2025, the Naval Academy formally changed its admissions policy. Under prior policy, the

---

[2] *See* Peter B. Hegseth, *Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DOD Field Activity Directors re: Restoring America's Fighting Force* (Jan. 29, 2025), https://media.defense.gov/2025/Jan/29/2003634987/-1/-1/1/RE-STORING-AMERICAS-FIGHTING-FORCE.PDF.

6

Academy could "consider race or ethnicity as one of many nondeterminative factors" in the applicant's file in certain circumstances when evaluating an applicant's candidacy for admission to the Academy and related programs. D. Ct. Doc. 150, at 58. This policy was found to be inconsistent with the directives of EO 14185 and the January SecDef Memorandum after review and consideration by the Naval Academy Superintendent, Vice Admiral Yvette M. Davids.

10. On February 14, 2025, Superintendent Davids, therefore, issued a superseding memorandum, entitled "ADMISSIONS GUIDANCE FOR THE CLASS OF 2029," that "states the objectives, criteria, and procedures to be used by the Admissions Board when considering candidates for admissions" to the Academy (the 2025 Superintendent's Guidance).[3] This memorandum was issued pursuant to the Superintendent's authority to "implement regulations authorized by the Secretary of the Navy regarding the Naval Academy curriculum and admissions policy under

---

[3] The 2025 Superintendent's Guidance and other internal Naval Academy directives are not publicly available and contain unrelated confidential information about the Naval Academy's admissions processes. Copies may be furnished under seal if the Court so requests. Plaintiff has obtained copies of these documents pursuant to an express confidentiality agreement and protective order governing discovery in this matter.

7

the provisions of [10 U.S.C. §603]." Secretary of the Navy (SECNAV) Inst. 1531.2D. Although termed a "Guidance," the memorandum contains a number of mandatory instructions from the Superintendent that the Admissions Board must follow.

11. As relevant here, under this 2025 Superintendent's Guidance, "at no point during the admissions process (including qualification and acceptance) should race, ethnicity, or sex be a factor for admission."

12. The Naval Academy's Dean of Admissions, Bruce Latta, took immediate steps to implement that revised policy within the Academy's day-to-day procedures governing the ongoing admissions cycle for the Class of 2029. He also subsequently memorialized the policy change in his own standing instructions to Admissions Office staff and the USNA Admissions Board. These instructions, termed the "Dean's Guidance," reaffirm that "[i]n determining the qualification or acceptance of each candidate, race, sex or ethnicity may not be considered."

13. In March 2025, the Naval Academy made public its change in policy, including in testimony before Congress and filings in this Court. See, *e.g.*, Statement of Vice Admiral Yvette M. Davids, USN, Superinten-

8

dent of the Naval Academy Before the Senate Subcommittee on Personnel, at 4-5 (Mar. 26, 2025), https://www.armed-services.senate.gov/imo/media/doc/davids_testimony.pdf; CA4 Doc. 24 (Mar. 28, 2025).

14. The Naval Academy's change in admissions policy has since been ratified and made permanent by the Department of Defense. On May 9, 2025, the Secretary of Defense issued a memorandum entitled "Certification of Merit-Based Military Service Academy Admissions" (the May SecDef Memorandum).[4] The May SecDef Memorandum declares that "[t]he Military Service Academies (MSA) are elite warfighting institutions" and that "[the] Department owes it to our Nation ... to ensure admissions to these prestigious institutions are based exclusively on merit." *Id.* It explained that "[s]electing anyone but the best erodes lethality [and] our warfighting readiness, and undercuts the culture of excellence in our Armed Forces." *Id.* Thus, "[i]n alignment with" his prior

---

[4] Peter B. Hegseth, *Memorandum for Senior Pentagon Leadership, Defense Agency and DOD Field Activity Directors re: Certification of Merit-Based Military Service Academy Admissions* (May 9, 2025), https://media.defense.gov/2025/May/09/2003707514/-1/-1/1/CERTIFICATION-OF-MERIT-BASED-MILITARY-SERVICE-ACADEMY-ADMISSIONS.PDF.

9

directives, the Secretary of Defense directed "the Secretaries of the Military Departments to certify within 30 days that, for purposes of the 2026 MSA admission cycle, as well as all subsequent admission cycles, the MSA admissions offices will (1) Apply no consideration of race, ethnicity, or sex; and (2) Offer admission based exclusively on merit." *Id.* The Under Secretary of Defense for Personnel and Readiness is further directed to "certify the MSAs are compliant with merit-based admissions processes upon the completion of the 2026 admissions cycle." *Id.*

15. In light of the foregoing, the government makes the following representations:

a. The Naval Academy changed its admissions policy so that race and ethnicity are no longer considered in any way at any point. The Academy maintains no race- or ethnicity-based objective or goal, including any attempt to make the racial composition of the Academy's classes approximate the racial composition of the Navy or Marine Corps, those branches' overall officer corps, or the U.S. population. The Academy has further ensured that, if applicants select a race or ethnicity on their application, no one with responsibility over admissions can see, access, or consider that information

10

during the admissions process. The Academy will not track the racial composition of applicants or prospective students or otherwise aggregate applicants or prospective students by race or ethnicity for the purpose of making admissions decisions. The Academy's Dean of Admissions will take all necessary steps, including providing relevant training and refresher training to Admissions Office staff, to ensure adherence to these policies.

    b.    These changes to the Academy's admissions policy have been approved by the highest levels of the military and the U.S. government and, as reflected in the May 2025 SecDef Memorandum, are intended to be permanent.

    c.    These changes reflect the judgment of the United States—based on the military's experience and expertise, and after reviewing the record in this case—that the consideration of race and ethnicity in admissions at the Naval Academy does not promote military cohesiveness, lethality, recruitment, retention, or legitimacy; national security; or any other governmental interest.

    d.    It is the military judgment of the Department of Defense that recruiting and promoting individuals based on merit alone,

11

and not based on their immutable characteristics, improves unit cohesion and performance.

e. Further, the Department of Defense has now determined that neither the recruitment and retention of talented officers nor the legitimacy of the U.S. military are positively affected by the service academies' consideration of race in admissions. The Department of Defense has now determined that merit-only admissions practices increase the legitimacy of the U.S. Military.

f. Likewise, the Department of Defense has now determined that race-based admission practices at the Naval Academy do not support any valid military interest. The Department of Defense has now determined that, when the academies were considering race in admissions, neither the Academy nor the Department of Defense had conducted any official study to quantify the effect that race-based admissions had on the composition of the academies or the officer corps. The Naval Academy produces only 20 percent of officers commissioned into the Navy, but those officers are proportionally more likely to reach the General and Flag Officer ranks

12

than those who access from other sources. However, the Department of Defense has no reliable evidence demonstrating that this likelihood is attributable to the consideration of race in admissions by the Naval Academy.

16. For its part, SFFA makes the following representation: After the Naval Academy announced that it would no longer consider race in admissions, SFFA learned that Member D—who is white—was admitted to the U.S. Naval Academy. Member D plans to attend in 2025.

17. Based on the representations set forth above, the government contends that this case is moot. A case becomes moot where a defendant voluntarily abandons the challenged conduct and that challenged conduct "'cannot reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 240-41 (2024). The government maintains that that standard is satisfied here.

18. Based at least on the representation in paragraph 16, SFFA does not dispute that this case can be dismissed as moot.

19. "If a claim becomes moot after the entry of a district court's final judgment and prior to the completion of appellate review," this Court will "generally vacate the judgment and remand for dismissal."

13

*Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003); *see, e.g.*, *Smith v. Streeval*, 2024 WL 701787, at *4 (4th Cir. Feb. 21); *Catawba Riverkeeper Found. v. N.C. DOT*, 843 F.3d 583, 592 (4th Cir. 2016); *R.M.S. Titanic v. United States*, 2021 WL 2627695, at *1 (4th Cir. Mar. 5) (explaining that "[t]he United States" had moved "to vacate the district court's orders under *United States v. Munsingwear*"). Vacatur "prevent[s] a judgment, unreviewable because of mootness, from spawning any legal consequences." *Munsingwear*, 340 U.S. at 40-41. It, among other things, "avoid[s] subsequent attribution of any res judicata effect to the unreviewed trial court judgment." *F.T.C. v. Food Town Stores*, 547 F.2d 247, 248-49 (4th Cir. 1977).

20.    Here, mootness occurred either through happenstance or the voluntary actions of the government (who won below)—either of which is sufficient for vacatur. When mootness occurs "'by happenstance'" through no fault of the party who lost below, appellate courts have a "'duty'" to vacate. *Id.* at 248; *accord Catawba*, 843 F.3d at 592; *Norfolk S. Ry Co. v. Alexandria*, 608 F.3d 150, 162 (4th Cir. 2010). Alternatively, the case for vacatur is even "clear[er]" when a case becomes moot "through the unilateral action of the party who prevailed in the lower court." *Azar v.*

14

*Garza*, 584 U.S. 726, 729 (2018) (cleaned up; emphasis added); *accord F.T.C.*, 547 F.2d at 249 ("[W]hen there exists a statutorily created right to seek review of an adverse determination, an appellee should not be able to deprive an appellant of that right by the device of mooting the controversy during the pendency of the appeal.").

21.  All relevant interests favor vacatur here, as they "customar[il]y" do. *Hirschfeld v. ATF*, 14 F.4th 322, 327-28 (4th Cir. 2021). Any precedential value in the district court's decision would not be a sufficient reason to deny vacatur. *See id.* That decision, after all, turned on judicial deference to military leadership, *see* D.Ct.Doc.150 at 111, 133-38, 147, 151 n.85; and military leadership has determined that the Academy should no longer consider race as a factor in admissions.

15

# CONCLUSION

This Court should dismiss this appeal as moot, vacate the district court's opinion and judgment, and remand with instructions to dismiss the case without prejudice as moot.

Respectfully submitted,

| | |
|---|---|
| */s/Thomas R. McCarthy* | BRETT A. SHUMATE |
| Thomas R. McCarthy | *Assistant Attorney General* |
| J. Michael Connolly | |
| Cameron T. Norris | YAAKOV M. ROTH |
| James F. Hasson | *Principal Deputy Assistant* |
| Gabe Anderson | *Attorney General* |
| CONSOVOY MCCARTHY PLLC | |
| 1600 Wilson Boulevard, Suite 700 | CHARLES E.T. ROBERTS |
| Arlington, VA 22209 | *Counsel to the Assistant* |
| 703-243-9423 | *Attorney General* |
| tom@consovoymccarthy.com | |
| | */s/ Jeffrey E. Sandberg* |
| Patrick Strawbridge | Melissa N. Patterson |
| CONSOVOY MCCARTHY PLLC | Jeffrey E. Sandberg |
| Ten Post Office Square | Jack Starcher |
| 8th Floor South PMB #706 | *Attorneys* |
| Boston, MA 02109 | CIVIL DIVISION, APPELLATE STAFF |
| | U.S. DEPARTMENT OF JUSTICE |
| Adam K. Mortara | 950 Pennsylvania Ave. NW |
| LAWFAIR LLC | Room 7519 |
| 40 Burton Hills Blvd., Ste. 200 | Washington, DC 20530 |
| Nashville, TN 37215 | 202-305-1754 |
| | jeffrey.e.sandberg@usdoj.gov |
| *Counsel for Plaintiff-Appellant* | *Counsel for Defendants-Appellees* |
| *Students for Fair Admissions* | *United States Naval Academy et al.* |

Dated: June 16, 2025

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Rule 27(d)(2)(A) because it contains 2,745 words, excluding the parts exempted by Rule 32(f). This motion complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

<u>/s/ Jeffrey E. Sandberg</u>

## CERTIFICATE OF SERVICE

On June 16, 2025, I e-filed this motion with the Court, which will email everyone requiring service.

<u>/s/ Jeffrey E. Sandberg</u>